```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/12/2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
       :
UNITE HERE RETIREMENT FUND AND TRUSTEES  :
OF THE UNITE HERE RETIREMENT FUND, UNITE  :
HERE LOCAL 450,       :
       :
       :   21-cv-2141 (LJL)
      Plaintiffs,  :
       :   OPINION AND ORDER
     -v-  :
       :
EDWARD VILLAGE GROUP, LLC d/b/a EDWARD  :
VILLAGE HOTEL, EDWARD CHICAGO  :
MANAGEMENT, LLC d/b/a EDWARD CHICAGO  :
HOTEL, DOES ONE THROUGH TEN,  :
       :
      Defendants.  :
       :
-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

The UNITE HERE Retirement Fund (the "Fund"), its Trustees and Fiduciaries, and UNITE HERE Local 450 ("Local 450") (collectively, "Plaintiffs") sued Edward Village Group, LLC d/b/a Edward Village Hotel ("Edward Village"), Edward Chicago Management, LLC d/b/a Edward Chicago Hotel ("Edward Chicago") (together, "Defendants"), and Does 1–10, as employers related to Defendants, to recover unpaid contributions, accrued leave, and withdrawal liability owed to the Fund or members of Local 450, along with damages and interest associated with the contributions and withdrawal liability. Plaintiffs allege violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and applicable collective-bargaining and settlement agreements. *See* Dkt. No. 6 ("Complaint" or "Compl.").

Plaintiffs served Edward Chicago with copies of the summons and Complaint on March 29, 2021 and served Edward Village on April 21, 2021. *See* Dkt. Nos. 10–11. When Defendants

1

failed to answer or otherwise respond to the Complaint, Plaintiffs sought and obtained Certificates of Default as to each of the Defendants. *See* Dkt. Nos. 15, 17. Plaintiffs then moved for default judgment against Defendants. Dkt. No. 19.

## BACKGROUND

The well-pleaded allegations of the Complaint are taken as true for the purposes of a motion for default judgment. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint." (internal quotation marks omitted)).

Defendants operated hotels that employed individuals represented by labor unions: Local 450 represented the employees of Edward Chicago, and UNITE HERE Local 24 ("Local 24") represented the employees of Edward Village. Compl. ¶¶ 8, 10. The terms and conditions of employment for each set of Defendants' employees were governed by collective-bargaining agreements. *Id.* ¶¶ 9, 11. Under the agreements between Edward Chicago and Local 450 (the "Chicago CBA"), Edward Chicago was obligated to make certain contributions to the Fund, a multiemployer plan within the meaning of ERISA, and to provide employees with paid sick leave and vacation leave. *Id.* ¶ 9; *see also id.* ¶ 3. Under the agreements between Edward Village and Local 24, Edward Village was required to make certain contributions to the Fund. *Id.* ¶ 11.

In December 2018, Edward Village's hotel was closed because of building code violations. *Id.* ¶ 13. Edward Village had not submitted contributions to the Fund for the months of November and December 2018, *id.* ¶ 31; after the closure, Edward Village permanently stopped making contributions to the Fund, *id.* ¶ 13. The Fund made demands for payment and, when Edward Village failed to respond to those, filed a lawsuit to collect the delinquent amounts. *Id.* ¶ 32. In February 2020, the parties to that lawsuit entered into a settlement agreement (the "Settlement

Agreement" or "Agreement"), pursuant to which Edward Village agreed to pay $10,000 on the first of February, March, and April 2020, followed by $12,500 on May 1, 2020, and further agreed to provide a signed Affidavit for Confession of Judgment. *Id.* ¶¶ 33–34.  Edward Village did not make any of the settlement payments, even after the Fund declared Edward Village to be in default and demanded immediate payment, nor did it provide the Fund with a signed Affidavit for Confession of Judgment. *Id.* ¶¶ 34–36.

In March 2020, Edward Chicago closed its hotel and permanently stopped making contributions to the Fund. *Id.* ¶ 14.  On October 19, 2020, the Fund sent Edward Chicago a letter informing Edward Chicago that the Fund had determined that the "Edward Hotel control group incurred a complete withdrawal from the Fund as of June 30th, 2020." Dkt. No. 1-3.  The letter also contained a written demand that Edward Chicago pay its proportionate share of the Fund's unfunded vested benefits—constituting its withdrawal liability—in the amount of $4,045,418, which could be paid in 80 consecutive quarterly installments of $61,719.75 each beginning on December 1, 2020.  Compl. ¶ 18; *see also* Dkt. No. 1-3.  Edward Chicago did not make a payment toward the alleged withdrawal liability by December 1, 2020, Compl. ¶ 19, and on December 24, 2020, the Fund informed Edward Chicago that if the failure to make the first quarterly liability payment was not cured within sixty days, it would be in default under ERISA, *id.* ¶ 20.  The Fund did not receive any quarterly payment within those sixty days, *id.* ¶ 22, and Edward Chicago did not submit a request to review the withdrawal liability calculation, as permitted by ERISA, or initiate arbitration to challenge the withdrawal-liability determination, *id.* ¶ 23.

Pursuant to the Chicago CBA, employees generally accrued paid vacation and were paid accrued, but unused, vacation time when they were discharged. *Id.* ¶ 48–49.  Similarly, employees received, and could accumulate, paid sick days, and unused sick days were paid upon discharge if

the discharge was not for "just cause." *Id.* ¶ 50. When Edward Chicago closed its hotel, a number of employees were discharged from employment without just cause and did not receive payment for accrued but unused vacation or sick time. *Id.* ¶¶ 51–54. Edward Chicago has failed to pay for this accrued time, despite demands to do so. *Id.* ¶ 56.

Even before closing down, Edward Chicago was delinquent in its contributions to the Fund. Plaintiffs allege that Edward Chicago submitted remittance reports for the months of September, October, November, and December 2019, which demonstrated that a total of $23,934.00 in principal contributions to the Fund were due, but Edward Chicago did not make any payments for those months, even after demand was made. *Id.* ¶¶ 42–44.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default and the entry of a default judgment. *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).

The first step, entry of a default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *Mickalis Pawn Shop*, 645 F.3d at 128; *see* Fed. R. Civ. P. 55(a). The second step, entry of a default judgment, "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted" by the pleadings. *Mickalis Pawn Shop*, 645 F.3d at 128; *see also* Fed. R. Civ. P. 55(b). Whether entry of default judgment at the second step is appropriate depends upon whether the well-pleaded allegations against the defaulting party establish liability as a matter of law. *See Mickalis Pawn Shop*, 645 F.3d at 137.

While a defendant who defaults admits the well-pleaded factual allegations in a complaint,

4

because a party in default does not admit conclusions of law, "a district court need not agree that the alleged facts constitute a valid cause of action." *Id.* (citation omitted). "The essence of Fed. R. Civ. P. 55 is that a plaintiff can obtain from a default judgment relief equivalent to but not greater than it would obtain in a contested proceeding assuming it prevailed on all of its factual allegations." *Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 367 (S.D.N.Y. 2020). Therefore, this Court is "required to determine whether the [plaintiff's] allegations are sufficient to establish the [defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 85 (2d Cir. 2009). A party later challenging the entry of a default judgment must satisfy the "good cause shown" standard in Federal Rule of Civil Procedure 55(c), which "requires a court to weigh (1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 454–55 (2d Cir. 2013).

The legal sufficiency of a non-defaulting party's claims "is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the movant's favor." *WowWee Group Ltd. v. Meirly*, 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019). A default judgment entered on well-pleaded allegations does not reach the issue of damages, and a plaintiff "must therefore substantiate [his] claim for damages with evidence to prove the extent of those damages." *Hood v. Ascent Med. Corp..* 2016 WL 1366920, at *15 (S.D.N.Y. Mar. 3, 2016), *report and recommendation adopted*, 2016 WL 3453656 (S.D.N.Y. June 20, 2016), *aff'd* 691 F. App'x 8 (2d Cir. 2017) (summary order).

To determine the amount of damages that should be awarded on a default judgment, Federal Rule of Civil Procedure 55(b)(2) "leaves the decision of whether a hearing is necessary to the discretion of the district court." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y.

2012) (citation omitted). And "[w]here, on a damages inquest, the plaintiff makes a damages submission and the defaulting defendant makes no submission in opposition and does not request a hearing, the court may determine the adequacy of the plaintiff's damages claim based on its submitted proofs." *Id.*

**DISCUSSION**

Plaintiffs raise claims for violations of ERISA, the Settlement Agreement, and the Chicago CBA. The Court will consider in turn whether the well-pleaded allegations establish Defendants' liability as a matter of law for each violation and, if so, what the appropriate award of damages is. The Court will then consider the request for attorney's fees and costs.

**I.      Plaintiff's Claims**

    **A.      ERISA Withdrawal Liability**

Plaintiffs move for default judgment on their first cause of action for violating ERISA, which seeks withdrawal liability and associated interest, liquidated damages, and attorney's fees and costs.

The Court concludes, as a preliminary matter, that the well-pleaded allegations in the Complaint and the exhibits in the record demonstrate that Defendants are employers in an industry affecting commerce within the meaning of ERISA. *See* 29 U.S.C. §§ 1002(5), (11), (12), 1103(a)(1).

ERISA makes an employer who withdraws, either completely or partially, from a multiemployer plan "liable to the plan in the amount determined . . . to be the withdrawal liability." *Id.* § 1381(a). An employer's "[w]ithdrawal liability is the withdrawing employer's proportionate share of the pension plan's unfunded vested benefits," *Trustees of Local 138 Pension Trust Fund v. F.W. Honerkamp Co. Inc.*, 692 F.3d 127, 130 (2d Cir. 2012), and "[a] plan's unfunded vested

benefits are calculated by finding the difference between the present value of the pension fund's assets and the present value of its future obligations to employees covered by the pension plan," *Bakery and Confectionary Union and Industry Int'l Pension Fund v. Zaro Bake Shop*, 2021 WL 2350094, at *3 (S.D.N.Y. June 8, 2021) (internal quotation marks omitted); *see also* 29 U.S.C. §§ 1391, 1393(c). "Businesses that are under 'common control' (also referred to as businesses that are members of a control group) are treated as a single employer for purposes of ERISA withdrawal liability." *Amalgamated Lithographers of Am. v. Unz & Co. Inc.*, 670 F. Supp. 2d 214, 223 (S.D.N.Y. 2009) (citing 29 U.S.C. § 1301(b)(1)). A "complete withdrawal" occurs when an employer "permanently ceases to have an obligation to contribute under the plan, or permanently ceases all covered operations under the plan." 29 U.S.C. § 1383(a). Any dispute over a withdrawal-liability determination is subject to the arbitration provisions of ERISA, and a defense to withdrawal liability that is not raised in arbitration is generally not preserved for judicial review. *Id.* § 1401(a)(1); *ILGWU Nat'l Ret. Fund v. Levy Bros. Frocks, Inc.*, 846 F.2d 879, 880–81, 886 (2d Cir. 1988); *cf. Bowers v. Transportacion Maritima Mexicana, S.A.*, 901 F.2d 258, 261 (2d Cir. 1990) (question of whether entity was an "employer" within the meaning of ERISA is a threshold legal question that is "properly for the courts, not an arbitrator" to determine).

As soon as practicable after an employer's withdrawal, a plan must notify the employer of the amount of the liability and the schedule for liability payments and must also demand payment in accordance with the schedule. 29 U.S.C. § 1399(b)(1). A plan cannot collect withdrawal liability unless it provides this notice, but it need only provide notice to one member of a control group, because constructive notice is then imputed to the other members of a control group. *See Amalgamated Lithographers*, 670 F. Supp. 2d. at 223–24. If an employer defaults on its obligation to pay withdrawal liability by failing to make a payment when due and not curing that failure

within sixty days of receiving written notice of the failure to pay, a fund is "entitled to require immediate payment of the entire withdrawal liability amount demanded plus interest." *Bowers*, 901 F.2d at 265; *see also* 29 U.S.C. § 1399(c)(5)(A); *id.* § 1401(b)(1) ("If no arbitration proceeding has been initiated . . . the amounts demanded by the plan sponsor under section 1399(b)(1) . . . shall be due and owing on the schedule set forth by the plan sponsor.").

Plaintiffs alleges that Edward Village and Edward Chicago, employers under ERISA, are part of the same control group and that a "complete withdrawal" occurred when Edward Chicago, "as the last member of the controlled group to cease contributing," permanently stopped contributing to the Fund. Compl. ¶ 16; *see also id.* ¶¶ 5–6, 15, 28. The Fund's October 19, 2020 letter to Edward Chicago informed Edward Chicago that the Board of Trustees of the Fund had determined that the control group "incurred a complete withdrawal from the Fund as of June 30th, 2020" and was thus liable for "$4,045,418.00 payable in eighty (80) quarterly installments of $61,719.75," with the first installment being due by December 1, 2020. Dkt. No. 1-3; Compl. ¶ 18.[1] The letter attached to it a calculation of the estimated withdrawal liability and quarterly payments due for the "Edward Hotel Controlled Group," Dkt. No. 1-3 at 3, 4, and a calculation of the estimated withdrawal liability and estimated payment schedule for the "Edward Village Group

---

[1] The Court notes that the allegations of the Complaint vary slightly from the text of the letters appended to the Complaint in a few ways. First, the appended letters are addressed to Edward Hotel Chicago, LLC at 6600 Mannheim Road, Rosemont, IL 60018, Dkt. Nos. 1-3, 1-4, while the Complaint alleges that it sent the letters to "Edward Chicago" and defines that term as Edward Chicago Management, LLC d/b/a Edward Chicago Hotel, at 6600 N. Mannheim Road, Rosemont, IL 60018, Compl. ¶ 5. Second, the Complaint says that "the Fund sent Edward Chicago a written demand for payment of *its* withdrawal liability," Compl. ¶ 18 (emphasis added), while the letters explain that the liability was incurred by the Edward Hotel control group, Dkt. Nos. 1-3,1-4, and not just Edward Chicago. Notwithstanding these variations, the notices contained the statutorily required information. *See* 29 U.S.C. § 1399(b)(1). And considering all well-pleaded allegations to be admitted and drawing all inferences in the non-defaulting party's favor, the Court accepts that Edward Chicago was sent these notices.

LLC," *id.* at 5–7. Neither Edward Village nor Edward Chicago paid the amount due or initiated arbitration to challenge this determination. Compl. ¶ 23. As an employer within the meaning of ERISA and recipient of the withdrawal-liability notice, Edward Chicago was required to initiate an arbitration proceeding within sixty days of the date of the Fund's demand for payment if it wished to dispute the Fund's notice or determination of liability. 29 U.S.C. §§ 1401(a)(1)(A), 1399(b)(1)(B); *see also Bowers*, 901 F.2d at 262 ("Unlike the issue whether [defendant] is an employer within the meaning of the [ERISA amendments], any dispute concerning the notice or amount of withdrawal liability shall be resolved through arbitration." (internal quotation marks omitted)). Edward Chicago is therefore liable for the withdrawal liability in the amount of $4,045,418.00; interest at 3.25% per annum on this amount from December 1, 2020,[2] as the due date of the first payment; liquidated damages in the amount of 20% of $4,045,418.00, as permitted by 29 U.S.C. § 1132(g)(2)(C) and provided for by the plan's policy, Dkt. No. 20-7 at V; and reasonable attorney's fees and costs, in an amount calculated below. 29 U.S.C. §§ 1401(b)(1), 1132, 1399(c)(5), 1145; *see also Bowers*, 901 F.2d at 265 ("[Defendant's] failure to pay or preserve its right to arbitration has resulted in a default. . . . Upon default, the Fund was entitled to require immediate payment of the entire withdrawal liability amount demanded plus interest. . . . Having successfully pursued delinquent payments, the Fund is also entitled to an award of liquidated

---

[2] Interest on unpaid ERISA contributions is calculated by the rate provided under the operative employee benefit plan. 29 U.S.C. § 1132(g). The Fund's relevant policy provides that interest on late withdrawal-liability payments:
> will accrue from the date the withdrawal liability payment is due to the date of payment at an annual rate equal to the average quoted prime rate on short-term commercial loans for the fifteenth day . . . of the month preceding the beginning of each calendar quarter, as reported by the Board of Governors of the Federal Reserve System in Statistical Release H.15.

Dkt. No. 20-7 at 8. The relevant interest rate, as reported by the Board of Governors of the Federal Reserve System, from December 2020 until present has been 3.25%.

9

damages, attorney's fees, and costs.").

Plaintiffs contend that Defendants are part of the same control group, which would mean that the notice given to Edward Chicago could be imputed to Edward Village, and Defendants would be jointly and severally liable for the amount of the withdrawal liability. *See Amalgamated Lithographers*, 670 F. Supp. 2d at 223–24; *Ret. Plan of UNITE HERE Nat'l Ret. Fund v. Kombassan Holding A.S.*, 692 F.3d 282, 285 (2d Cir. 2010) ("Under the principles of the common control doctrine, all businesses under common control are treated as a single employer for purposes of collecting withdrawal liability, and each is liable for the withdrawal liability of another." (internal quotation marks omitted)).

Unlike questions about notice and the amount of withdrawal liability, "the issue of whether [Defendants] were part of a common control group . . . and therefore 'employers' within the meaning of [ERISA], is an issue for the courts, and not an arbitrator, to decide." *I.L.G.W.U. Nat'l Ret. Fund v. ESI Group*, 2002 WL 999303, at *5 (S.D.N.Y. May 15, 2002) (citing *Bowers*, 901 F.2d at 261). In the context of a motion for default judgment, conclusory allegations cannot establish that the defaulting party is liable as a matter of law. *See E.A. Sween Co., Inc. v. A&M Deli Express Inc.*, 787 F. App'x 780, 782 (2d Cir. 2019) (summary order) ("A defaulting party admits only well-pleaded factual allegations; it does not admit conclusory allegations or legal conclusions."). Here, Plaintiffs have pleaded no facts to support their allegations that Edward Chicago and Edward Village are part of a "control group"—they have only alleged, repeatedly and in a conclusory fashion, that Defendants are part of the same "controlled group" for the purposes of ERISA and the Internal Revenue Code. *See* Compl. ¶¶ 15 ("Because of their common ownership, Edward [Village] and Edward Chicago were deemed by the Fund to be part of the same controlled group under" the Internal Revenue Code); 16 ("Pursuant to ERISA . . . Edward

Chicago's permanent cessation of all contributions to the Fund, as the last member of the controlled group to cease contributing, constituted a 'complete withdrawal' from the Fund."); 28 ("Defendant Edward [Village], as a related employer and member of the same controlled group as Edward Chicago, is jointly and severally liability [sic] to pay the outstanding balance of the withdrawal liability."). Plaintiffs have alleged no facts regarding Defendants' ownership that would establish that the two belong to a "control group" under the applicable statutes, nor have they pointed to any information incorporated into the Complaint that supports the conclusory allegations. *See Div. 1181 Amalgamated Transit Union–N.Y. Emp. Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 601–02 (E.D.N.Y. 2017) (denying default judgment against one defendant where plaintiff pension plan "failed to plead any *facts* which support its allegation that [the defendants are] under common control" and instead "simply conclude[d] that [defendants are] under common control . . . without setting forth facts from which it reached that conclusion."). Based on the well-pleaded allegations of the Complaint and the information appended thereto and incorporated by reference, the Court cannot say that Defendants are part of a control group. Because a plan must provide to an employer notice of the amount of liability and the schedule for payment and must demand payment before it can collect withdrawal liability from that employer, *see Amalgamated Lithographers*, 670 F. Supp. 2d at 223, without independent notice to Edward Village or sufficient allegations that it is a member of the control group, the Court will not enter judgment against Edward Village for the withdrawal liability or associated sums.[3]

---

[3] "Because notice to one member of the control group is considered as notice to all members," *Trustees of Amalgamated Ins. Fund v. Saltz*, 760 F. Supp. 55, 58 (S.D.N.Y. 1991), Edward Village may well be able to be held liable for the withdrawal liability if Plaintiffs plead facts that would demonstrate that it is part of a control group with Edward Chicago.

B.      **Settlement Agreement**

Plaintiffs' second cause of action, against Edward Village, arises from Edward Village's failure to abide by the terms of the Settlement Agreement it entered into with the Fund to resolve contributions that were due but not made to the Fund. Under the terms of the Settlement Agreement, Edward Village was required to pay the Fund $42,500.00 in four monthly installments and execute an Affidavit of Confession of Judgment, but it never did so. Compl. ¶¶ 33–35; Dkt. No. 1-5 ¶¶ 1, 2. Following the procedures laid out in the Settlement Agreement, the Fund provided a written notice of default, but Edward Village still did not pay. Compl. ¶¶ 36–37; Dkt. No. 1-5 ¶ 3.

The well-pleaded allegations of the Complaint establish that Edward Village has breached the Settlement Agreement. Under the Agreement, the Fund was entitled to demand the full amount due upon Edward Village's default and to bring an action to collect the full amount due, interest, and reasonable attorney's fees and costs. Dkt. No. 1-5 ¶ 3. The Fund now seeks the unpaid amounts due and owing under the Settlement Agreement, interest, liquidated damages, and attorney's fees and costs, pursuant to 29 U.S.C. § 1132(g)(2). The Court concludes that the Fund is entitled to judgment in the amount of $42,500.00, as the amount unpaid under the Settlement Agreement; interest on amount unpaid at the rate of 1.00% per month to be calculated on $10,000.00 from February 1, 2020 through February 28, 2020, on $20,000 from March 1, 2020 through March 31, 2020, on $30,000 from April 1, 2020 through April 30, 2020, and on $42,500 from May 1, 2020, as provided for in the Agreement; and attorney's fees and costs as outlined below.

The Court will not award liquidated damages pursuant to 29 U.S.C. § 1132(g)(2)(C). That provision requires a court to award liquidated damages in an action "to enforce [29 U.S.C. § 1145]

in which a judgment in favor of the plan is awarded." 29 U.S.C. § 1132(g)(2)(C). 29 U.S.C. § 1145 in turn requires employers who are obligated to contribute to multiemployer plans to "make such contributions in accordance with the terms and conditions of such plan" or an applicable collective bargaining agreement. While the lawsuit giving rise to the Settlement Agreement appears to have been an action to enforce the obligations imposed by 29 U.S.C. § 1145 to contribute to the Fund, the Fund's claim here is to enforce the terms of the Settlement Agreement itself, which does not provide for liquidated damages in the event of a default.

### C. Chicago CBA

#### 1. Delinquent Contributions under ERISA

Plaintiffs' third cause of action is for contributions that Edward Chicago was obligated to make to the Fund for the months of September 2019 through December 2019. The well-pleaded allegations of the Complaint, along with the incorporated Exhibits, establish that Edward Chicago submitted remittance reports for those months, but that it did not make the necessary contributions to the Retirement Fund, as required by the CBA. Dkt. No. 1-1 at 26–27; Dkt. No. 1-7; Dkt. No. 1-8; Compl. ¶¶ 42–44. However, the documentation offered in support of the damages figure does not appear to support a judgment for unpaid contributions in the requested amount of $23,934.00. The remittance reports submitted by Edward Chicago show an amount due for the pensions of ten full-time employees for each of the delinquent months of $557.23 each, for a total of $5,572.30 per month or $22,289.20 total.[4] The Fund sent a letter to Edward Chicago explaining that "the Company submitted remittance reports for the months of September 2019 through December 2019

---

[4] Plaintiffs' counsel's declaration in support of the motion for default judgment suggests that the only relevant amounts are the "principal amounts due for the full time employees who are covered by the contract," which the Court understands to exclude part-time employees and those employees with the notation "NOT UH" listed on the remittance reports in Dkt. No. 1-7.

documenting that a total of $23,934.00 in contributions are due for those months." Dkt. No. 1-8; *see also* Compl. ¶ 42. This figure matches that on an exhibit accompanying the declaration submitted by Plaintiffs' counsel, which calculates the monthly contributions at $5,983.50, or $598.35 per employee. *See* Dkt. No. 20-8.

Indeed, according to the Chicago CBA, the contribution rate should have been $598.35 per month per employee, beginning on September 1, 2019, but the remittance reports submitted by Edward Chicago, and incorporated by reference into the Complaint, only showed that $557.23 was due for each eligible employee for each of the relevant months. Dkt. No. 1-7. The Court cannot credit the allegation that "Defendant Edward Chicago submitted remittance reports . . . for the months of September 2019 through December 2019, showing that a total of $23,934.00 in principal contributions [] were due" when that allegation is expressly contradicted by information incorporated by reference into the Complaint. Compl. ¶ 42; *see also* Dkt. Nos. 1-7, 1-8; *cf.* Dkt. No. 20 ¶ 40 ("By preparing and submitting those reports, Edward Chicago has admitted to that liability."). The Court will, however, accept that Edward Chicago failed to pay the delinquent contributions despite receiving demands for payment, as this is established by the well-pleaded and admitted-through-default allegations of the Complaint, and will award damages in the amount supported by its remittance reports—$22,289.20, plus interest at the rate of 1.00% per month (non-compounded), *see* Dkt. No. 20-7 at V, liquidated damages in the amount of 20% of the delinquent contributions, and attorney's fees and costs as outlined below, as required by 29 U.S.C. § 1132(g)(2)(B)–(D).

### 2. Unpaid Accrued Leave

Plaintiffs' fourth cause of action is for unpaid accrued leave owed to members of Local 450 pursuant to the Chicago CBA. Under the Chicago CBA, employees who have worked for

over a year and are discharged are paid vacation time that they have accrued but not used. Dkt. No. 1-1 at 19–20. Similarly, employees who earned but did not use sick days are paid the value of those sick days, at a rate of 50% of their daily rate, upon discharge so long as the discharge was not for "just cause." Compl. ¶ 50; Dkt. No. 1-1 at 20 (providing that "[s]ick days will not be paid out at termination if termination is for 'just cause'" and that they will be "paid out to employees who resign and provide at least two weeks' notice").

The well-pleaded allegations of the Complaint establish that, upon Edward Chicago's hotel closing, at least seven employees were discharged without just cause, and those seven employees were entitled to be paid out for unused and pro-rated vacation time but were not. Compl. ¶¶ 51–52, 54. Of those seven employees, two had unused sick time at the time of their discharge, for which they were also entitled to be paid out but were not. *Id.* ¶¶ 53–54. By the plain terms of the Chicago CBA, Edward Chicago was obligated to pay the employee members of Local 450 for this accrued time. The Court will therefore grant judgment in favor of Plaintiffs on this count.

The Court has reviewed the calculations for the accrued but unpaid vacation and sick time contained in Dkt. Nos. 1-9 and 20-9, and they appear to be largely correct. However, the amount of pro-rated vacation for Asalia Gomez was incorrectly recorded as $768.00, when it should be $740.77 ((83.33% of $148.16) x 6 months). The Court will therefore award $34,436.74 in accrued but unpaid vacation and sick time.

## II. Attorney's Fees and Costs

Plaintiffs seek attorney's fees and costs pursuant to ERISA and the Settlement Agreement for their first through third causes of action. As both ERISA and the Settlement Agreement provide for the awarding of attorney's fees and costs for a successful enforcement action, the Court will award them here.

As a general matter, the "starting point" in analyzing whether claimed attorney's fees are appropriate is "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Milea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *see generally Lilly v. City of New York*, 934 F.3d 222, 227–34 (2d Cir. 2019) (discussing calculation of reasonable hourly rates and reasonable number of hours expended). The party seeking fees bears the burden of demonstrating that its requested hours and hourly rates are reasonable and must provide a court with sufficient information to assess the fee application. *See Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 512–13 (S.D.N.Y. 2011).

A court's focus is "on setting a reasonable hourly rate, taking account of all case-specific variables." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 189 (2d Cir. 2008). The reasonable hourly rate is "the rate a paying client would be willing to pay," bearing in mind "that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.* at 190. When an attorney's requested hourly rate is higher than rates found to be reasonable in the relevant market, a court may reduce the requested rate. *See Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998). Once a court has determined the appropriate hourly rate, it must also examine whether the number of hours billed was reasonable. The court "should exclude excessive, redundant or otherwise unnecessary hours[.]" *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).

An attorney's fee award may also include "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). These "costs" may include photocopying, travel, telephone costs, *id.*, as well as filing fees and reasonable process-server fees, *Rosendo v. Everbrighten Inc.*, 2015 WL 1600057, at *9 (S.D.N.Y. Apr. 7, 2015), *report and recommendation adopted*, 2015 WL

4557147 (S.D.N.Y. July 28, 2015).

The Court has reviewed the submissions of Plaintiffs' counsel documenting the hours worked and the activities performed in support of this action. Dkt. No. 20 ¶¶ 43–44; Dkt. No. 20-10. It accepts the costs figure of $268.00, which is comprised entirely of filing fees. Plaintiffs' counsel also submits a figure of 12.4 hours expended on the ERISA-related issues by attorneys on this case and supports this submission with contemporaneous time records. The amount of time expended is reasonable in this case. *See, e.g.*, *Trustees of Drywall Tapers and Pointers Local Union No. 1974 Benefit Funds v. Excellence Drywall, LLC*, 2020 WL 9815185, at *3 (S.D.N.Y. Aug. 14, 2020), *report and recommendation adopted as modified* 2020 WL 9815254 (S.D.N.Y. Sept. 21, 2020) (concluding that 12.9 hours is a reasonable number of hours expended on an ERISA default-judgment case); *Trustees of the N.Y.C. Dist. Council of Carpenters Pension Fund v. B&L Moving and Installation, Inc.*, 2017 WL 4277175, at *8 (S.D.N.Y. Sept. 26, 2017), *report and recommendation adopted* 2018 WL 705316 (reducing number of hours awarded in ERISA default-judgment case to 30.35). The hourly rate of $325 for attorney Jeremy E. Meyer is reasonable given his experience,[5] but the rate charged in this matter for the partner's time is higher, at $525 per hour, than the rate accepted for other recent ERISA cases before this Court. *See Trustees of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Inniss Construction, Inc.*, 2021 WL 2556130 (S.D.N.Y. May 13, 2021), *report and recommendation adopted* 2021 WL 2555840 (S.D.N.Y. June 22, 2021) (awarding hourly rate of $350 for partner time in a default-judgment case); *Broach v. Metropolitan Exposition Servs., Inc.*, 2020 WL 3892509 at *9 (S.D.N.Y. July 10, 2020) (noting that "[c]ourts in this district have approved partner billing rates that range from $350

---

[5] Though Mr. Meyer does not indicate in his declaration when he was admitted to the bar, it appears that he has been practicing in federal court for at least sixteen years. *See United Auto Workers Local 259 Soc. Sec. Dep't v. Metro Auto Center*, 2005 WL 8177291 (D.N.J. Feb. 16, 2005).

17

per hour to $425 per hour in ERISA delinquent contribution cases" and awarding hourly rate of $295 for counsel's time). The Court will reduce the partner's billing rate to $425 per hour and award $4,080.00 in attorney's fees (11.9 hours for Mr. Meyer at an hourly rate of $325 plus 0.5 hours of partner time at an hourly rate of $425) plus $268 in costs.

## CONCLUSION

The motion for default judgment is GRANTED in part and DENIED in part.

The Clerk of Court is respectfully directed to prepare a judgment against Edward Chicago Management, LLC as follows:

- In favor of the UNITE HERE Retirement Fund for $4,045,418.00, interest at 3.25% per annum on $4,045,418.00 from December 1, 2020, and liquidated damages in the amount of 20% of $4,045,418.00, for Edward Chicago's failure to pay withdrawal liability;

- In favor of the UNITE HERE Retirement Fund for $22,289.20, with interest at the rate of 1.00% per month (non-compounded), and liquidated damages in the amount of 20% of $22,289.20, for Edward Chicago's delinquent contributions;

- In favor of UNITE HERE Local 450 for $34,436.74 in accrued vacation and sick time unpaid by Edward Chicago.

Plaintiffs' motion as against Edward Village Group, LLC is GRANTED in part and DENIED in part. UNITE HERE Retirement Fund is entitled to a judgment against Edward Village Group, LLC for $42,500.00, with interest at the rate of 1.00% per month to be calculated on $10,000.00 from February 1, 2020 through February 28, 2020, on $20,000 from March 1, 2020 through March 31, 2020, on $30,000 from April 1, 2020 through April 30, 2020, and on $42,500 from May 1, 2020. The denial is without prejudice to Plaintiffs filing an Amended Complaint

setting forth a factual basis for Edward Village's liability for withdrawal liability under ERISA and making a renewed motion for a default judgment upon notice to Edward Village Group, LLC. If no such Amended Complaint is filed within thirty days of the date of this Opinion and Order, the Court will enter judgment in favor of UNITE HERE Retirement Fund and against Edward Village Group, LLC, in the amount provided herein.

    Plaintiffs are awarded $4,348.00 in attorney's fees and costs, pursuant to ERISA and the Settlement Agreement with Edward Village.

    The Clerk of Court is respectfully directed to close Dkt. No. 19.

SO ORDERED.

Dated: November 12, 2021
       New York, New York

                                      LEWIS J. LIMAN
                                United States District Judge